**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

FRANK DEMEO,                          :
                                      :    Civil Action No. 05-774 (JBS)
            Petitioner,               :
                                      :
      v.                              :    **OPINION**
                                      :
WARDEN JOHN NASH, FCI FORT            :
DIX,                                  :
                                      :
            Respondent.               :


**APPEARANCES:**

    FRANK DEMEO, Petitioner pro se
    #60256-053
    F.C.I. Fort Dix
    Unit 5711, P.O. Box 2000
    Fort Dix, New Jersey  08640

    CHRISTOPHER J. CHRISTIE, United States Attorney
    DOROTHY DONNELLY, Assistant U.S. Attorney
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorneys for Respondent

**SIMANDLE**, District Judge

    Petitioner Frank Demeo, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The respondent is John Nash, Warden at FCI Fort Dix.

I.  BACKGROUND

On February 13, 2003, petitioner Frank Demeo ("Demeo") was sentenced to a 37 month prison term with three years supervision on February 13, 2003, by the United States District Court for the Eastern District of New York pursuant to his conviction on charges of racketeering and conspiracy to commit a crime of violence in aid of racketeering.  Demeo's statutory projected release date is January 16, 2006, with earned and projected good conduct time credits.  His full prison term otherwise would expire on June 10, 2006.

On April 25, 2005, the Warden at FCI Fort Dix signed a Community Corrections Center ("CCC") referral form recommending Demeo's CCC placement on December 14, 2005.  The Community Corrections Manager in New York, New York will make Demeo's CCC arrangements.

Demeo contends that he is entitled to a full six months CCC placement pursuant to Bureau of Prison ("BOP") policy in place before December 2002.  He argues that the December 2002 policy conflicts with 28 U.S.C. § 3621(b).  He also alleges that the December 2002 policy violates his right to due process and equal protection.

However, as the respondent's answer to this petition shows, Demeo's CCC placement date was not determined pursuant to the December 2002 policy, nor was it considered pursuant to new

regulations established by the BOP, 28 C.F.R. §§ 570.20 and 570.21, which became effective on February 14, 2005. Rather, the BOP determined Demeo's CCC placement date by considering specific factors governing pre-release planning and Demeo's special supervision classification. In particular, the BOP chose to limit Demeo's CCC placement because (1) Demeo has a special category status based upon his criminal background and violence characteristics, (2) Demeo had declined to participate in CCC and seek employment, and (3) Demeo has a stable home environment. Thus, the respondent contends that the BOP exercised it discretion in considering individual factors in accordance with 18 U.S.C. § 3621(b).

The respondent also asserts that this Court lacks jurisdiction over Demeo's § 2241 Petition, that Demeo has failed to exhaust his administrative remedies, and that Demeo's challenge to the December 2002 policy is moot.

## II.   RELEVANT STATUTES AND REGULATIONS

Federal law imposes upon the BOP the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the

>  Bureau determines to be appropriate and suitable, considering -
>
>  >  (1) the resources of the facility contemplated;
>  >  (2) the nature and circumstances of the offense;
>  >  (3) the history and characteristics of the prisoner;
>  >  (4) any statement by the court that imposed the sentence--
>  >  >  (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>  >  >  (B) recommending a type of penal or correctional facility as appropriate; and
>  >  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
>  In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

>  (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

On December 13, 2002, the Office of Legal Counsel of the United States Department of Justice prepared a Memorandum Opinion

for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."  The Office of Legal Counsel ("OLC") concluded that community confinement does not constitute "imprisonment" for purposes of the Sentencing Guidelines provisions, and that a CCC can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, DAG Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the

5

that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.  On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."  This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.  See, e.g., Schorr v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein).  The new ten-percent rule was instituted without notice to the public and was not reflected in any BOP Program Statement.

     The new ten-percent rule generated a wave of litigation from federal prisoners seeking its invalidation on various grounds; federal courts addressing the issues raised in this litigation were sharply divided as to the validity of the new policy.  Id. at *3 (collecting cases).  See also Miranda v. Miner, Civil Action No. 04-2590(JBS) (D.N.J. Aug. 20, 2004) (finding the December 2002 policy invalid).  Responding to this division, on August 18, 2004, the BOP published proposed regulations regarding placement in CCCs or home confinement.  See 69 Fed.Reg. 51213

(2004).  Because numerous U.S. District Courts had held that a CCC is a "penal or correctional facility" within the meaning of § 3621(b) and that the BOP had discretion under 18 U.S.C. § 3621(b) to place offenders, sentenced to a term of imprisonment, into CCCs at any time during their imprisonment, the proposed regulations reflected an acquiescence in that statutory construction and a determination how to exercise that discretion.  Specifically, the BOP determined to exercise its discretion categorically to permit designation of inmates to community confinement[1] only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months, except where statutorily-created programs explicitly authorize greater periods of community confinement.

In the Federal Register, the BOP stated, without further detail, that it had considered the list of factors contained in § 3621(b), as well as other considerations, in reaching this decision.  The BOP identified as "most significant" the following factors: consistency in designating inmates to places of confinement; the resources of CCCs make them particularly well suited as placement options for the final portion of offenders' prison terms; policy determinations of the Sentencing Commission

---

[1] "Community confinement" is defined to include community corrections centers (also known as "halfway houses") and home confinement.

7

limiting confinement in CCCs; and the congressional sentencing policy, as reflected in § 3624(c), that pre-release transitional programming "exist" during the last ten percent of the prison sentence, not to exceed six months.  The BOP also considered the degree to which designation to a CCC could undermine the deterrent effect of imprisonment.  Following a period for comment, the BOP issued final regulations on January 10, 2005, to become effective on February 14, 2005.[2]  70 Fed. Reg. 1659 (2005).  See 28 C.F.R. §§ 570.20, 570.21.

## II.  ANALYSIS

### A.  Jurisdiction

Here, the respondent first argues that this Court lacks jurisdiction to grant the requested relief.  The respondent cites the Third Circuit's recent opinion in Beckley v. Miner, 125 Fed. Appx. 385, 2005 WL 256047 (3d Cir. 2005), which holds that a petition for habeas relief under § 2241 does not provide jurisdiction for a petitioner's challenge to his place imprisonment.

In Beckley, the petitioner was seeking transfer to another federal prison for placement in a drug treatment program, which

---

[2] During the comment period, two U.S. Courts of Appeals issued opinions finding that § 3621(b) authorizes the Bureau to place inmates in CCCs at any time during service of their prison sentence and that this authority is not limited by § 3624(c) to the last ten percent of the sentence being served.  See Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

potentially offered an opportunity for a discretionary reduction in Beckley's sentence.  The Third Circuit found § 2241 jurisdiction lacking because the requested relief, transfer to another prison, would not alter his release date or affect the legality of his conviction.  The court distinguished Beckley's situation from those cases where inmates sought good time credits directly impacting the length of a sentence, Edwards v. Balisok, 520 U.S. 641 (1997); and where the relief sought as the result of an alleged sentencing mistake would have reduced an inmate's prison sentence, see Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991), finding jurisdiction under § 2241 in those cases clearly appropriate.

This Court disagrees with respondent's contention that jurisdiction is lacking under § 2241.[3]  "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."  Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001).  An action under § 2241 "generally challenges

---

[3] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

9

the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, types of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)(emphasis in original).[4]  See also Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)("petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 ..."); Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000)("A section 2241 petition on behalf of a sentenced prisoner attacks the manner in which the sentence is being carried out or the prison authorities' determination of its duration ..."); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)("challenges to the length, appropriateness or

---

[4]   But see Wright v. Cuyler, 624 F.2d 455 (3d Cir. 1980), where the Third Circuit ruled that a § 1983 civil rights action was the appropriate vehicle for a state prisoner challenging a non-admission to a home-furlough program.  The court noted that plaintiff's "demand for a fair application of the [program] eligibility criteria, as distinct from his demand for admission to the program, relates to the manner by which the prison authorities reach their decision and not the outcome of their decision." Id. 624 F.2d at 458 n.5.  Thus, because the plaintiff was seeking fair decisionmaking procedures, rather than release, the action was a § 1983 claim. Id.  See also Georgevich v. Strauss, 772 F.2d 1078, 1087 (3d Cir. 1985)(in banc), cert. denied, 475 U.S. 1208 (1986).  Moreover, the Third Circuit recognized in both Wright and Georgevich that success in the § 1983 action might affect the duration of the prisoners' confinement, but this indirect, eventual consequence was not a sufficient reason to characterize the claims as exclusively maintainable as a habeas petition. See Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir.), cert. denied, 510 U.S. 920 (1993).

conditions of confinement are properly brought under 28 U.S.C. § 2241"); United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), cert. denied, 459 U.S. 1211 (1983)(claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241). A petition under § 2241 in the district where the federal inmate is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence." Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976), cert. denied, 429 U.S. 851 (1976).

Indeed, "Section 2241 of title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute." Zucker v. Menifee, 2004 WL 102779, *3 (S.D.N.Y. January 21, 2004)(citing Maleng v. Cook, 490 U.S. 488, 493 (1989)(per curiam)). Additionally, this Court has the authority to compel the BOP to exercise its discretion in selecting and designating a place for service of sentence. See McCarthy v. Doe, 146 F.3d 118 (2d Cir. 1998). Habeas corpus relief under 28 U.S.C. § 2241 is available to effectuate this authority to the extent that the prisoner is in any form of "custody" in this district. See Hensley v. Municipal Court, 411 U.S. 345 (1973).

Here, Demeo challenges the BOP's determination to reduce his CCC placement from six months to 30 days. This claim certainly

relates to the duration and execution of petitioner's prison sentence, and is not limited solely to the condition of his confinement.  The Third Circuit's decision in Beckley is distinguishable from this case because Beckley's action related to a prison transfer or location of confinement that did not directly affect the length of his sentence.  Moreover, the Third Circuit did not address the applicability of its ruling in the context of CCC placement cases.  Finally, this Court will take judicial notice of the fact that numerous cases challenging the BOP's recent policy change affecting CCC placement have been filed in this federal district as § 2241 petitions, and have been decided as § 2241 cases.[5]  Therefore, the Court finds that § 2241 is an appropriate avenue for the relief that Demeo seeks.

B.  The Relief Sought By Demeo is Moot

Demeo argues that he is entitled to a full six months CCC placement based on pre-December 2002 policy.  The respondent counters that the petition is moot because the December 2002 policy has been superceded by the February 14, 2005 regulations.

The Court agrees with respondent that Demeo's claim challenging the application of the December 2002 policy to his

---

[5] In these cases, the courts have determined that a habeas petition under § 2241 is the proper vehicle for challenging the CCC placement issue because it is an actual challenge to the execution of a federal inmate's sentence. See United States v. Eakman, No. 03-1835, Slip Op. at n.8 (3d Cir. July 12, 2004); Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991).

CCC placement is rendered moot by the new February 2005 regulations which supercede the December 2002 policy. See Princeton University v. Schmid, 455 U.S. 100, 103 (1982)(per curiam)(holding that where a challenged regulation is superceded by a new regulation, "the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'")(*quoting* Hall v. Beals, 396 U.S. 45, 48 (1969)(per curiam)). Moreover, it would be futile for Demeo to now amend his petition in order to challenge the new regulations because the respondent has stated that Demeo was not eligible for early CCC placement due to his special supervision classification. Thus, neither the December 2002 policy nor the new February 2005 regulations factored in the BOP's decision regarding Demeo's CCC placement, and the petition should be denied as moot.

C.   No Federal Statutory or Constitutional Basis for Relief

Even if Demeo's petition was not moot, the Court also finds no basis for the relief Demeo seeks. In response to this petition, the respondent submitted the Declaration of Robert J. Whritenour, dated May 12, 2005, a Unit Manager at FCI Fort Dix since October 2001. (Whritenour Decl., ¶ 1). As a Unit Manager, Mr. Whritenour reviews the records of inmates to make recommendations for CCC placement. He was personally familiar

13

with the CCC placement decision respecting Demeo. (Whritenour Decl., ¶ 2). Mr. Whritenour also explained that all reviews take into consideration an "inmate's institutional adjustment and overall ability to successfully transition into the community, which is affected by the length of the inmate's sentence, his medical needs, his ability to find employment, his financial resources, and family ties." (Id. at ¶ 4). A referral for CCC placement includes an inmate's classification material and a recommended range for CCC placement. "This recommendation is based on assessment of the inmate's needs for services, public safety, and the necessity of the [BOP] to manage its inmate population responsibly." (Id.).

Mr. Whritenour further states that "[p]roper inmate classification is required before an inmate receives clearance for participation in the community." This takes into account special needs for management, such as "witness security cases, threat to government officials, broad publicity, disruptive groups, state prisoners, separation, and special supervision." (Id.).

On December 1, 2004, a program review meeting was held with the Unit Team regarding Demeo's CCC placement. The Unit Team preliminarily decided that a 30 day CCC placement was appropriate in Demeo's case based upon the length of his prison term (37 months), the fact that he had an established residence, and that

14

he would not be seeking employment due to his age and health. Mr. Whritenour states that during this program review, Demeo indicated that he would decline CCC placement. (Id. at ¶ 7). The Unit Team also considered Demeo's "special supervision" classification, which was applied to Demeo based on his ties to organized crime. Typically, inmates like Demeo with ties to organized crime are given a Central Inmate Monitoring ("CIM") assignment of special supervision. As a result of Demeo's CIM assignment of special supervision, the Unit Team was required to submit a request for Demeo's participation in CCC placement and community-based programs for Pre-CIM Clearance. Demeo was approved for a CCC placement of 30 days. (Id. At ¶¶ 8-9).

On January 29, 2005, the Unit Team met with Demeo. Demeo again told the Unit Team he had an established residence and that he would not seek employment. Accordingly, the Unit Team made a final recommendation for a 30-day CCC placement and a referral packet was sent to the Warden for final review and approval. (Id., ¶ 11). On April 25, 2005, the Warden signed Demeo's CCC referral form recommending a CCC placement date of December 14, 2005. This CCC referral form was mailed to the Community Corrections Manager in new York, New York, on May 5, 2005, for further processing. (Id., ¶ 12).

Mr. Whritenour confirms that Demeo's CCC placement date was not limited to the pre-release preparation date of October 11,

15

2005, due to Demeo's Special Supervision/Separation CIM Assignment, and the special factors in this particular case, namely, Demeo's lack of need for transitional placement given his established residence and intention not to seek employment because of his age and medical condition.  (Id., ¶ 13).

Thus, as demonstrated above, Demeo was never presumed eligible for even a 10% limitation for pre-release transitional placement under 28 U.S.C. § 3624(c), because of his special supervision classification.  Even so, two meetings were held by the Unit Team to consider the various factors applicable in pre-release planning under 28 U.S.C. § 3624(c).

As mentioned above, Demeo takes issue with the BOP's December 2002 policy, which limited an inmate to a strict 10% CCC placement at the end of an inmate's prison term.  This claim is moot, not simply because new regulations became effective in February 2005, but because it is clear that the December 2002 policy did not effect the BOP's decision with respect to Demeo's 30-day CCC placement referral.[6]  Moreover, it is clear that the BOP's decision in this regard was within the agency's discretionary authority under § 3621(b), based on its

---

[6] The Court notes that BOP's pre-December 2002 policy relating to transitional CCC placement did not automatically provide six months CCC placement for each inmate.  An individual needs assessment and evaluation was conducted, and a six month placement was never guaranteed.

16

consideration of numerous factors, including Demeo's transitional needs and special supervision concerns.

Further, there is no indication from the facts and circumstances considered in the CCC referral process in this case that Demeo was denied due process. In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification. See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

Moreover, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary

17

actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.  Finally, an inmate does not have a constitutional right to a hearing on such transfers.  See McKune v. Lile, 536 U.S. 24, 37 (2002).  Thus, it appears that Demeo received all the process he was due in the BOP's discretionary decision as to his transitional CCC placement.  The Unit Team met on two occasions with Demeo to discuss his transitional needs.  Demeo indicated he had no need for transitional placement because he did not intend to seek employment.

In addition, the Court finds no cognizable equal protection claim in this case.  The Equal Protection Clause protects prisoners from arbitrary discrimination.  Turner v. Safley, 482 U.S. 78, 84 (1987); Lee v. Washington, 390 U.S. 333 (1968).  Nevertheless, a court's review of prison policies and actions is tempered by recognition that lawful incarceration necessarily limits many privileges and rights and that courts are ill-equipped to deal with many problems of prison administration.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner, 482 U.S. at 84-85 (1987).  Thus, an inmate's constitutional rights are subject to restrictions that are "reasonably related to legitimate penological interests."  Turner, 482 U.S. at 89.

To determine the constitutionality of a prison policy, a court must weigh four factors:

> "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," and this connection must not be "so remote as to render the policy arbitrary or irrational." Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that "fully accommodate[] the prisoner's rights at de minimis cost to valid penological interests."

Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (quoting Turner, 482 U.S. at 89-91) (other internal citations omitted). See also DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). This analysis applies to inmate equal protection claims. See DeHart, 227 F.3d at 61.

Given this standard, Demeo has failed to allege an equal protection claim. Here, Demeo has been classified as a special supervision case due to his ties to organized crime, a security classification that impacts on any referral for CCC placement. The factors in Demeo's case also show that he does not have the same transitional needs as other inmates. Thus, the BOP's decision to limit his CCC placement to 30 days is clearly related to legitimate penological concerns and Demeo's particular lack of need for transitional placement designed for re-entry in the workforce and community. There is simply no allegation of racial, ethnic, religious, or any other discrimination in effecting this decision, and the decision is reasonably related

to a legitimate penological interest in the efficient administration, control, placement and transfer of the BOP's inmate population.  There is nothing to suggest that Demeo is being treated in a disparate manner from other similarly situated federal prisoners in special supervision classification.  Thus, Demeo's equal protection claim fails as a matter of law.[7]

### III.  CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                    **s/ Jerome B. Simandle**
                    Jerome B. Simandle
                    United States District Judge

Dated:  **September 30, 2005**

---

[7] To the extent there are other district court opinions that may be contrary to the opinion of this Court in this instance, they are not binding on this Court.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 430 n. 10 (1996).  Indeed, Demeo's equal protection claim seems to be based on the fact that other cases in this district have been granted the relief he seeks, and thus, he should receive the same consideration in CCC placement for the sake of uniformity.  However, this Court's determination in this case is based on different factual circumstances than the other cases cited by Demeo in his petition.